UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| SHAWN M. WALTHER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 1:23-cv-00067-SNLJ |
| | ) |
| BILL STANGE, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

On April 24, 2023, Petitioner Shawn M. Walther ("Walther") filed this Petition for Writ of Habeas Corpus pursuant to Title 28, United States Code, Section 2254. This Court then ordered Respondent Bill Stange to show cause why the relief requested in Walther's motion should not be granted. Based on the reasons set forth below, this Court will dismiss Walther's claims as waived and procedurally barred or otherwise deny them without an evidentiary hearing because they fail as a matter of law.

### I.  BACKGROUND

In 2018, a jury found Petitioner Shawn Walther guilty of first-degree robbery and armed criminal action. The Circuit Court of St. Louis County then sentenced Walther to 30 years' imprisonment. Petitioner is an inmate at the Southeast Correctional Center in Charleston, Missouri. Respondent Bill Stange is the Warden of the Southeast Correctional Center and supervises Walther's custody while he serves his sentence. Thus, Warden Stange is the proper respondent in this case. 28 U.S.C. § 2254 Rule 2(a).

## II.  STATEMENT OF FACTS

In federal habeas review, this Court is limited to the evidentiary record presented in state court.  28 U.S.C. § 2254(e); *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). This Court must presume that facts found by the state courts are correct, unless Walther rebuts that presumption by clear and convincing evidence.  § 2254(e).  On direct appeal, the Missouri Court of Appeals summarized the evidence at trial as follows:

> [Walther] approached a Circle K convenience store clerk, outside on a cigarette break. When the clerk finished smoking, [Walther] followed her into the store and asked for all the money in the cash register. The clerk thought [Walther] was joking, but [Walther] insisted he was serious and pointed a gun at her. The clerk gave [Walther] some of the money in the register and tried to close the drawer, but [Walther] said, "I want all of it." The clerk gave [Walther] all the money, and [Walther] left. The clerk called the police and described [Walther]'s appearance. The store's surveillance camera captured [Walther]'s entire interaction with the clerk. The clerk testified Appellant did not ask her to call the police
>
> [Walther] fled the scene and approached a Metropolitan Sewer District worker near the River Des Peres less than a mile away from the Circle K. [Walther] claimed he had twisted his ankle in the woods nearby and offered to pay the worker $10 for a ride across the river in his work vehicle. The worker thought this was odd considering there were no woods nearby and said he could lose his job if he gave [Walther] a ride. The worker noticed a police car nearby and suggested [Walther] ask the police for help. [Walther] then jumped down into a ditch.
>
> The worker summoned the police officer, who was coincidentally responding to the 911 call from the Circle K. The officer drew her weapon, approached [Walther] in the ditch, and told [Walther] to raise his hands. [Walther] was reluctant to move his hands out from under his sweatshirt, but he eventually complied when a second police officer arrived. The officers arrested [Walther] without incident and found a .38 caliber pistol on the ground with a bullet in the chamber. The officers found a large amount of cash in [Walther]'s right front pocket. The Circle K clerk identified [Walther] as the robber at the scene of the arrest. [Walther] then apologized to the clerk.

Resp. Ex. E at 2.

## III.  LEGAL STANDARDS

### A.  AEDPA[1] Deference Under 28 U.S.C. § 2254(d)

In deference to the state-court decisions, federal courts cannot grant relief on claims that were previously denied in state court, unless the state-court decisions on those claims contradicted or unreasonably applied clearly established federal law or rested on an unreasonable determination of the facts.  28 U.S.C. § 2254(d).

In reviewing whether a state court's application of federal law was unreasonable, federal courts review the legal conclusion reached by the court, not merely its rationale. *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012).  Where there is no conspicuous misapplication of on-point Supreme Court precedent, the proper question is whether there is "any reasonable argument" that the state court's judgment is consistent with federal law.  *Id*.  "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'"  *Brown v. Luebbers*, 371 F.3d 458, 461 (8th Cir. 2004) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).  A state court's application of federal law is not unreasonable simply because it is incorrect.  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

---

[1] The Antiterrorism and Effective Death Penalty Act of 1996.

## B.  Procedural Default

A prisoner seeking federal habeas relief must first exhaust the remedies available in state court.  28 U.S.C. § 2254(b).  State courts are entitled to the first opportunity to address and correct alleged violations of the prisoner's federal rights.  *Coleman v. Thompson*, 501 U.S. 722, 731 (1991) (citing *Rose v. Lundy*, 455 U.S. 509 (1991)).

To preserve issues for federal habeas review, a prisoner must fairly present his claims to state courts during direct appeal or state post-conviction proceedings.  *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997) (citing *Nave v. Delo*, 62 F.3d 1024, 1030 (8th Cir. 1995)).  "A procedural default occurs when a prisoner violates a state procedural rule and this violation serves as an independent and adequate state-law basis to uphold the state courts' dismissal of the claim," *Franklin v. Hawley*, 879 F.3d 307, 311 (8th Cir. 2018) (citing Murphy v. King, 652 F.3d 845, 849 (8th Cir. 2011)), or when, "a federal habeas petitioner's claims [do not] rely on the same factual and legal bases relied on in state court."  *Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006) (quoting *Winfield v. Roper*, 460 F.3d 1026, 1034 (8th Cir. 2006); *Osborne v. Purkett*, 411 F.3d 911, 919 (8th Cir. 2005); *Jones v. Jerrison*, 20 F.3d 849, 854 (8th Cir. 1994) ("[F]air presentation" requires petitioners to, "present the same facts and legal theories to the state court that he later presents to the federal courts").

Where a petitioner has procedurally defaulted on his claims, he is barred from bringing them in a federal habeas corpus petition, unless he can establish cause and prejudice, or a fundamental miscarriage of justice.  *Franklin*, 879 F.3d at 311 (citing *Coleman*, 501 U.S. at 750); *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995).

4

## C. Evidentiary Limits Under 28 U.S.C. § 2254(e)(2)

Federal law prohibits habeas courts from expanding the record beyond the evidence presented in state court, unless a habeas petitioner can satisfy the standard required by § 2254(e)(2). "Although state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so." Cullen v. Pinholster, 563 U.S. 170, 181 (2011). Where a habeas petitioner seeks to expand the record beyond the evidence presented in state court, "the conditions prescribed by § 2254(e)(2) must [] be met." Mark v. Ault, 498 F.3d 775, 788 (8th Cir. 2007). Section 2254(e)(2) states:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

In enacting AEDPA, Congress made the deliberate choice to limit both the types of claims cognizable in federal habeas proceedings and the evidence that federal courts can consider in support of those claims. § 2254(a)–(g); Pinholster, 563 U.S. at 181. Section 2254(d) limits the evidence for claims presented in state court and § 2254(e)(2),

5

"restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court." *Id*. at 186.  Read together, § 2254(d) and § 2254(e)(2) work in tandem to prohibit new evidence in federal habeas review in all but the rarest of cases—those where evidence that could not have been discovered before sheds new light on the petitioner's constitutional claims in a way that would likely acquit them of the underlying offense.

"[U]nder AEDPA and [Supreme Court] precedents, state post-conviction counsel's ineffective assistance in developing the state-court record is attributed to the prisoner."  *Shinn v. Ramirez*, 142 S. Ct. 1718, 1734 (2022).  "[W]hen a federal habeas court convenes an evidentiary hearing for any purpose, or otherwise admits or reviews new evidence for any purpose, it may not consider that evidence on the merits of a negligent prisoner's defaulted claim, unless the exceptions in § 2254(e)(2) are satisfied." *Id*. at 1738.

**D.  Statute of Limitations**

Walther's petition appears timely filed within the statute of limitations provided in 28 U.S.C. § 2244(d).  Federal law imposes a one-year statute of limitations for state prisoners to file for federal habeas relief.  § 2244(d)(1).  That time begins to run on, "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review."  § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 150–51 (2012).

Walther filed a timely appeal after he was sentenced, and the Missouri Court of Appeals issued an opinion on August 20, 2019.  Resp. Ex. B at 102, 107; Resp. Ex. E at

6

1. Walther did not seek rehearing or transfer, and therefore his convictions became final fifteen days later, on September 4, 2019. Mo. Sup. Ct. R. 81.04(a). The statute of limitations then ran for 75 days until Walther filed a Rule 29.15 motion on November 18, 2019. Resp. Ex. F at 38; § 2244(d)(2) (Statute is tolled while a, "properly filed application for State post-conviction or other collateral review . . . is pending."); *Artuz v. Bennett*, 531 U.S. 4, 7–9 Federal (2000). Walther's post-conviction proceedings tolled the statute of limitations until the Missouri Court of Appeals issued its mandate affirming the denial of post-conviction relief on September 22, 2022. Resp. Ex. J at 2; § 2244(d)(2); *King v. Hobbs*, 666 F.3d 1132, 1136 (8th Cir. 2012). The statute of limitations ran once again for 207 days until Walther mailed the petition in this case in on April 17, 2023. Doc. 1-5 at 1; *Nichols v. Bowersox*, 172 F.3d 1068, 1074 (8th Cir. 1999); *King*, 666 F.3d at 1136. In total, the statute of limitations ran for 282 days, so Walther's petition is timely.

## IV.  DISCUSSION

Walther's petition appears to raise five grounds for relief.

### A.  Ground One

Walther first raises a claim of trial court error, arguing that the trial court refused to submit a diminished capacity instruction to the jury. Doc. 1 at 11. This claim will be denied because it is meritless under §2254(d).

"As a general rule, jury instructions do not form a basis for habeas corpus relief." *Williams v. Lockhart*, 736 F.2d 1264, 1267 (8th Cir. 1984). "The request for additional jury instructions is a matter addressed to the sound discretion of the trial judge." *Wallace*

7

*v. Lockhart*, 701 F.2d 719, 729 (8th Cir. 1983) (quoting *Richards v. Solem*, 693 F.2d 760, 766 (8th Cir. 1982)).  "A federal court may grant habeas corpus relief only if the trial judge's erroneous refusal to accept additional jury instructions denied [the] petitioner due process." *Wallace*, 701 F.2d at 729 (quoting *Richards*, 693 F.2d at 766).  In Missouri, "[t]he submission of a diminished-capacity instruction 'is mandatory only if requested by the Defendant and [] supported by evidence of mental disease or defect relevant to the existence of [the] required culpable mental state.'" *State v. Knight*, 355 S.W.3d 556, 559 (Mo. App. 2011) (quoting *State v. Moore*, 1. S.W.3d 586, 590 (Mo. App. 1999)) (internal quotation marks and emphasis omitted).  "A defendant is presumed to be free from mental disease or defect unless he presents substantial evidence to the contrary." *Moore*, 1 S.W.3d at 590 (emphasis omitted), and demonstrates that, "[t]he existence of [said] mental disease or defect [] [is] linked to the existence of [the] requi[site] [] mental state." *Knight*, 355 S.W.3d at 559.

    Walther's first claim argues that the trial court erred in refusing to provide the jury with a diminished capacity instruction.  Doc. 1 at 11.  The state trial court determined that Walther had failed to present evidence of a mental disease or defect substantial enough to necessitate a diminished capacity instruction because his medical records indicated that the physician who had previously diagnosed him with bipolar disorder had withdrawn this diagnosis.  Resp. Ex. A at 57–59.  In addition, the State's mental health expert concluded that he did not have a mental disease or defect as defined by the pertinent statute.  Resp. Ex. E at 8.  The appellate court on direct appeal also found that Walther's mental disease or defect evidence failed to negate his, "intent to permanently deprive

8

Circle K of money," because he had "confessed to police [that, before the robbery,] he was craving methamphetamine and contemplating how to get more money for drugs." Resp. Ex. E at 12 (quotation marks omitted).

The findings of the state courts adhere to the *Wallace* standard because they clearly demonstrate that Walther was afforded the process he was entitled to. After requesting a diminished capacity instruction, Walther was provided with the opportunity to present substantial evidence of a mental disease or defect, as well as the opportunity to demonstrate how this alleged defect negated his mens rea. He simply failed to establish either of these elements. Thus, the decisions of these lower courts both reasonably apply federal law and make apparent the reasons as to why Walther's first claim lacks merit. At the very least, Walther has failed to raise facts demonstrating that every fair-minded jurist could agree that the trial court violated his right to procedural due process in refusing to submit a diminished capacity instruction. *See Harrington*, 562 U.S. at 101 (quoting *Yarborough*, 541 U.S. at 664). Therefore, the Court will give deference to the rulings of these lower courts as required under § 2254(d) and deny Walther's first claim as meritless.

**B.  Grounds Two, Three, and Four**

Walther's second, third, and fourth claims allege that the Rule 29.15 motion court erred in denying his state post-conviction motion without a hearing because it denied Walther's claim that his trial attorneys were ineffective for failing to peremptorily strike a juror, for failing to establish that he suffered from a mental disease or defect using either a witness or his medical records, and for failing to request a trial court inquiry as to why

9

the jury foreman signed the "not guilty" verdict forms. Doc. 1. The Court will deny Walther's second, third, and fourth claims because they are not cognizable on federal habeas review. Even if the Court were to consider the merits of Walther's second, third, and fourth claims, they are meritless under § 2254(d).

1. ***Walther's second, third, and fourth claims do not present a basis for federal habeas relief.***

Federal courts may only grant habeas relief to state prisoners if their custody violates federal law. 28 U.S.C. § 2254(a); *see Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("'[F]ederal habeas corpus relief does not lie for errors of state law.'"). To the extent that Walther challenges the post-conviction court's application of Missouri Supreme Court Rule 29.15(h), which governs when a post-conviction evidentiary hearing is required, his claims fail to state a basis for federal habeas relief. *Williams-Bey v. Trickey*, 894 F.2d 314, 317 (8th Cir. 1990). "Because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Id*. (citations and quotations omitted). Therefore, to the extent that Walther argues that the post-conviction court should have held an evidentiary hearing on his second, third, and fourth claims, these claims fail to state a basis for federal habeas relief and will be denied.

2. ***Walther's second, third, and fourth claims are meritless under § 2254(d).***

Walther's second claim alleges that the Rule 29.15 motion court erred in denying his state post-conviction motion without a hearing because it denied Walther's claim that

10

his trial attorneys were ineffective for failing to peremptorily strike a juror.  Doc. 1 at 19.  The lower courts determined that Walther's trial attorneys were not ineffective in choosing not to strike the juror at issue.  Resp. Ex. F 123–24; Resp. Ex. I at 7–9.  While this juror provided that he had, "always held law enforcement in high esteem, and [] [thought that] they are general[ly] held to a higher standard of trust and honesty than the average person," he also stated that he "could set [his opinions] aside and would consider a police officer's testimony 'just like anyone else.'"  Resp. Ex. F at 123.  The motion court concluded that, based on this juror's latter response, it was reasonable for Walther's trial attorneys not to strike him.  *Id*. at 123–124.  The appellate court on post-conviction appeal found that this additional response indicated the juror's intent to be objective and determined that Walther's claim was thus refuted by the record.  Resp. Ex. I at 9.

Walther's third claim asserts that the Rule 29.15 motion court erred in denying his state post-conviction motion without a hearing because it denied Walther's claim that his trial attorneys were ineffective for failing to establish that he suffered from a mental disease or defect using either a witness or his medical records.  Doc. 1 at 29-30.  The lower courts concluded that Walther's trial attorneys were not ineffective in failing to present such evidence.  Resp. Ex. F at 124; Resp. Ex. I at 9.  The motion court provided that Walther's attorneys, in lieu of calling their own mental health expert, elected to question the State's expert, "about her review of [Walther's] medical notes and diagnoses[.]"  Resp. Ex. F at 123.  The post-conviction appellate court found that, even if Walther's trial attorneys had presented the evidence at issue, Walther would not have been entitled to a diminished capacity instruction because he had still not established that

11

his "bipolar diagnosis conincide[d] with the time of the robbery." Resp. Ex. I at 10. In addition, the appellate court provided that Walther's "attorneys did offer evidence of his bipolar disorder during the sentencing phase," specifically referring to his "BJC Behavioral health records." *Id*. at 11.

Walther's fourth claim argues that the Rule 29.15 motion court erred in denying his state post-conviction motion without a hearing because it denied Walther's claim that his trial attorneys were ineffective for failing to request a trial court inquiry as to why the jury foreman signed the "not guilty" verdict forms. Doc. 1 at 41. The lower courts determined that this claim did not state a basis for relief. Resp. Ex. F at 124; Resp. Ex. I at 12. The motion court asserted that Walther could not, "show how the failure to request the jury to be polled resulted in prejudice to [him]." Resp. Ex. F at 124. The appellate court on post-conviction appeal provided that the foreperson's signature on the "not guilty" verdict forms was crossed out, and that, after the jury entered its guilty verdicts, the "court poll[ed] the jury and each individual juror orally confirmed the verdicts' accuracy." Resp. Ex. I at 12–13.

The findings of the lower courts adhere to the *Strickland* standard. In denying Walther's second claim, the lower courts concluded that Walther's trial attorneys were not ineffective. Resp. Ex. F at 124; Resp. Ex. I at 9. The record indicates that the allegedly biased juror made statements demonstrating objectivity, which establishes both that Walther's trial attorneys did not act unreasonably, and that Walther cannot prove prejudice resulting from their decision not to strike this juror. Resp. Ex. F at 123; Resp. Ex. I at 8. In deciding Walther's third claim, the lower courts once again found that

12

Walther's trial attorneys were not ineffective. Resp. Ex. F at 124; Resp. Ex. I at 9. The record makes clear that Walther could not establish his entitlement to a diminished capacity instruction, so his trial attorney's electing not to present evidence of his mental disease or defect was a reasonable, non-prejudicial attempt to avoid wasting time and presenting cumulative evidence. Resp. Ex. F at 123–24; Resp. Ex. I at 9–12. In denying Walther's fourth claim, the lower courts determined that he failed to establish ineffective assistance. Resp. Ex. F at 124; Resp. Ex. I at 12. The record makes apparent that the jury had been polled to confirm its guilty verdicts, indicating that Walther was not prejudiced by his trial attorney's alleged failure to request a similar or additional inquiry. Resp. Ex. I at 12–13.

The decisions of these lower courts both reasonably apply federal law and make apparent the reasons as to why Walther's second, third, and fourth claims lack merit. At the very least, Walther has failed to raise facts demonstrating that every fair-minded jurist could agree as to the incorrectness of the motion court's decision to deny these claims without an evidentiary hearing. *See Harrington*, 562 U.S. at 101 (quoting *Yarborough*, 541 U.S. at 664). Therefore, the Court will deny Walther's second, third, and fourth claims as meritless.

## C.  Ground Five

Walther's fifth claim alleges that the Rule 29.15 motion court erred in denying his state post-conviction motion without a hearing because it denied Walther's claim that the trial court erroneously refused to accept the "not guilty" verdict forms and failed to inquire as to why the foreman signed these forms. Doc. 1 at 51. The Court will deny

13

Walther's fifth claim because it is procedurally defaulted.  Furthermore, this claim is not cognizable on federal habeas review and is meritless under § 2254(d).

### 1. *Walther's fifth claim is procedurally defaulted.*

In Missouri, "a post-conviction motion cannot be used as a substitute for a direct [] [] appeal . . . ."  *Stallings v. State*, 784 S.W.2d 862, 863 (Mo. App. 1990) (citing *McCrary v. State*, 529 S.W.2d 467, 471 (Mo. App. 1975)).  "A defendant who deliberately bypasses his right of appeal cannot[,] by post-conviction proceedings[,] raise claims of error he might have raised on direct appeal."  *Id*. (quoting *Thompson v. State*, 651 S.W.2d 657, 657–8 (Mo. App. 1983).

Walther's fifth claim argues that the trial court erred in not accepting the "not guilty" verdict forms and not inquiring as to why the foreman signed these forms.  Doc. 1 at 51.  Walther failed to raise this claim of trial-court error on direct appeal.  Resp. Ex. C.  Therefore, because Walther violated Missouri's rule requiring trial court errors to be addressed on direct appeal, this Court has an independent and adequate state-law basis for denying his fifth claim as procedurally defaulted.

Walther attempts to excuse the default of his fifth claim due to, "a very real and apparent conflict of interest."  Doc. 1 at 56.  Specifically, he alleges that his trial attorneys made promises that they could not keep and ignored his abuse allegations and requests to present additional evidence of his mental disease or defect.  *Id*. at 56–60.  To prove that a conflict of interest exists for the purpose of establishing cause and prejudice, a habeas petitioner must show that, "an actual conflict of interest adversely affected his lawyer's performance."  *Nave*, 62 F.3d at 1034 (internal quotation marks omitted)

14

(quoting *Salam v. Lockhart*, 874 F.3d 525, 537 (8th Cir. 1989)).  Therefore, because Walther's petition fails to plead facts establishing an actual conflict that adversely affected his direct appellate counsel's ability to raise such a claim, the Court will not excuse the default of Walther's fifth claim.

### *2. Walther's fifth claim is does not present a basis for federal habeas relief.*

Since Walther's fifth claim is similar to his second, third, and fourth claims, the argument as to why those claims are not cognizable on federal habeas review is also applicable here.  Therefore, to the extent that Walther argues that the post-conviction court should have held an evidentiary hearing on his fifth claim, this claim fails to state a basis for federal habeas relief and will be denied.

### *3. Walther's fifth claim is meritless under § 2254(d).*

"Federal courts may not grant relief [on claims of trial court error] unless the [] trial [court] error had 'a substantial and injurious effect or influence in determining the jury's verdict.'" *Jackson v. Norris*, 573 F.3d 856, 858 (8th Cir. 2009) (quoting *Fry v. Pliler*, 551 U.S. 112, 116 (2007)).

Walther's fifth claim argues that the Rule 29.15 motion court erred in denying his state post-conviction motion without a hearing because it denied Walther's claim that the trial court instructed the jury that it would not accept the "not guilty" verdict forms and did not inquire as to why the foreman signed these forms.  Doc. 1 at 51.  While the appellate court on post-conviction appeal refused to address the underlying claim of trial court error because Walther had not raised it on direct appeal, Resp. Ex. I at 14, the record otherwise demonstrates that this claim lacks merit.

15

After the jury's guilty verdicts were read, Walther's trial attorney requested that the jury be polled. Resp. Ex. A at 325. This jury polling affirmed that the guilty jury verdicts were unanimous. *Id*. at 325–27. Following the jury's dismissal to deliberate on Walther's sentence, the court revealed to both parties that the foreman had signed the "not guilty" verdict forms but crossed out this signature and placed his initials below it. *Id*. at 341–42. The court "note[d] for the record that the jurors were polled . . . they kn[e]w they found [] [Walther] guilty, and no one said that was not their verdict." *Id*. at 342. Walther's trial attorney then moved for a mistrial, but the court denied this motion based on its belief that, "the jurors had an opportunity, because they were polled, to say [what they] meant to say." *Id*. at 343. In addition, the jurors were polled once again after Walther's sentences were read. *Id*. at 346–48. Furthermore, when addressing Walther's fourth claim, the appellate court on post-conviction appeal found that both jury polls, "confirmed [the jury's] intention to find [Walther] guilty," and also that, "the initially discovered 'not guilty' verdict forms were simply a mistake." Resp. Ex. I at 13.

The findings of the lower courts adhere to the *Jackson* standard. The record demonstrates that the alleged trial court error did not have substantial and injurious effect or influence on the jury's verdict. The court actually made Walther aware that the foreman had accidentally signed the "not guilty" verdict forms and provided the jurors with several opportunities to declare that their verdicts of guilt were not unanimous. Resp. Ex. A at 325–27; 341–42; 346–48. Because the jurors did not indicate any intent to change their minds, the court concluded that the proper verdict had been entered. *Id*. at 343. Therefore, the decisions of these lower courts both reasonably apply federal law and

16

make apparent the reasons as to why Walther's fifth claim lack merit. At the very least, Walther has failed to raise facts demonstrating that every fair-minded jurist could agree as to the incorrectness of the motion court's decision to deny this claim without an evidentiary hearing. *See Harrington*, 562 U.S. at 101 (quoting *Yarborough*, 541 U.S. at 664). Therefore, the Court will give deference to the rulings of these lower courts as required under § 2254(d) and deny Walther's fifth claim as meritless.

**D. Ground Six**

The Court agrees with Respondent that Walther invokes the doctrine of unclean hands and raises a Brady claim in "Ground Six" of his petition. Doc. 1 at 71–79. The Court will deny these claims because they were not fairly presented in the lower courts and are therefore procedurally defaulted. Even if the Court were to consider the merits of these claims, they will be denied as meritless under § 2254(e)(2).

*1. The Court will deny Walther's sixth claim as procedurally defaulted.*

Walther failed to invoke the unclean hands doctrine or raise a Brady claim at any point during his state court proceedings. Resp. Ex. C; Resp. Ex. F at 79–110; Resp. Ex. G. Because Walther failed to raise these claims in state court, he cannot rely on factual and legal bases from his state court proceedings to raise them here. Therefore, these claims were not fairly presented and are procedurally defaulted. *Interiano*, 471 F.3d at 856 (quoting *Winfield*, 460 F.3d at 1034); *Osborne*, 411 F.3d at 919; *Jones*, 20 F.3d at 854.

While it does not appear as though Walther attempts to excuse the default of these claims, he does try to assert that the alleged default of his fifth claim should be excused

17

due to a conflict of interest.  Doc. 1 at 56.  Walther's conflict of interest does not excuse this default because he fails to establish an actual conflict that adversely affected any of his lawyer's abilities to raise these claims.

### 2. *Walther's sixth claim is meritless under § 2254(e)(2).*

The state-court record does not contain any evidence establishing either the elements of a *Brady* claim, or that the State acted with unclean hands.  Because Walther's petition does not plead facts complying with the strict § 2254(e)(2) standard, this Court cannot expand the record to include additional evidence in support of these claims. *Shinn*, 142 S. Ct. at 1738.  Therefore, Walther cannot plead facts demonstrating their merit, and these claims may also be dismissed for this reason.

### V.  CONCLUSION

For the foregoing reasons, this Court will deny Walther's § 2254 motion [Doc. 1] without an evidentiary hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Walther has not made a substantial showing of the denial of federal constitutional right.

**SO ORDERED** this 14th day of July, 2025.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE